J-S10021-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
RONNIE SMITH :
:
Appellant : No. 777 EDA 2022

Appeal from the PCRA Order Entered February 16, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0000103-2016

BEFORE: PANELLA, P.J., LAZARUS, J., and STABILE, J.

MEMORANDUM BY LAZARUS, J.: **FILED MAY 18, 2023**

Ronnie Smith appeals from the order, entered in the Court of Common Pleas of Philadelphia County, dismissing her first petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546. Counsel has filed a petition to withdraw, pursuant to **Turner**/**Finley**.[1] After review, we affirm the PCRA court's order and grant counsel's petition to withdraw.

This Court has previously adopted the following facts:

On October 1, 2015, the Philadelphia police received information[,] including a phone number[,] that led them to the 1500 block of Woodstock Street. On that date, Officer Jason Yerges[, of the Philadelphia Police Department,] dialed the phone number and listened on speakerphone to the conversation between a confidential informant (CI) and the recipient of the call. [Officer] Yerges testified that he heard what appeared to be a female voice speaking on the receiving end of the call. [He] then gave the [CI] $40[.00] of buy money and directed him to conduct

---

[1] **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988); **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (en banc).

a transaction with the recipient of the phone call at 1551 South Woodstock Street. [Officer Yerges] observed the [CI] enter the house and exit approximately 5 minutes later. The [CI] returned to [Officer] Yerges' patrol car and handed to him one blue pill stamped with "A 215." A seizure analysis indicated that the pill tested positive[] for oxycodone.

On October 7, 2015[,] at approximately 7:00 p.m., Officer Yerges employed the same [CI] to replicate the previous transaction. [Officer] Yerges testified that he redialed the same phone number, and the [CI] arranged a drug buy with the recipient of the phone call. [Officer] Yerges then gave the [CI] $40[.00] in buy money and directed him to go to the 1500 block of South Woodstock Street. The [CI] returned to [Officer] Yerges and gave him two green pills stamped "A 214" immediately after the transaction. A seizure analysis indicated that these pills tested positive[] for oxycodone.

On October 15, 2015, [at approximately 2:00 p.m.,] Officer Yerges and other officers returned to the same location with a search warrant for 1551 South Woodstock Street[. Officer] Yerges set up surveillance from his patrol car at the corner of Tasker Street and Woodstock Street (approximately 100 feet from the target location). [Officer] Yerges testified that the front door to the house was open and he observed [Smith] seated on a chair a few feet within the entrance. Approximately fifteen minutes later, he observed a female walk down the 1500 block of South Woodstock Street with money in her hand and approach[] the doorway. [Officer Yerges witnessed Smith] c[o]me to the doorway [] and exchange[] items for money. [The unidentified female wore a red coat and blue jeans. Officer Yerges observed the female put her palm to her mouth before walking away. He indicated that it was not a swallowing motion.]

On October 16, 2015[,] at approximately 12:30 p.m., Officer Yerges and other agents set up surveillance at the same location. Yerges testified he observed a heavyset black male (Leonard Ware[—Smith's uncle]) knock on the door to the 1551 Woodstock Street several times unanswered. He then observed Ware looking up and down the street and answering a couple [of] phone calls. Approximately 15 minutes later, he observed [Smith] and two male passengers arrive in a SUV. [Smith] was carrying a brown handbag when she exited the vehicle. [Smith], Ware[,] and the unidentified men then entered the house.

Shortly thereafter, the police and other agents knocked and announced their presence before using force to enter the house. [Smith] was secured in the hallway on the second floor as was a brown handbag in [] close proximity [to her]. Police recovered from the brown handbag 6 pill bottles containing various scheduled drugs, a small clear glass jar containing purple liquid, a utility bill for 1551 Woodstock Street in [Smith's] name, a white cell phone, and cash.[2]

> [2] Seizure analysis of the scheduled drugs in the pill bottles tested positively for oxycodone, Alprazolam, codeine and acetaminophen, Diazepam, and a non-controlled prescription item.

*Commonwealth v. Smith*, 3386 EDA 2017, *1-3 (Pa. Super. filed Mar. 7, 2019) (unpublished memorandum decision), citing Trial Court Opinion, 7/10/18, at 2-4 (footnotes in original, record citations and emphasis omitted).

On September 16, 2016, following a waiver trial, Smith was convicted of possession with intent to deliver,[3] possession of a controlled substance,[4] use/possession of drug paraphernalia,[5] criminal use of a communication facility,[6] and conspiracy.[7,8] On September 14, 2017, Smith was sentenced to an aggregate term of 6 to 12 years' incarceration followed by 2 years'

_____

[3] 35 P.S. § 780-113(a)(30).

[4] *Id.* at § 780-113(a)(16).

[5] *Id.* at § 780-113(a)(32)

[6] 18 Pa.C.S.A. § 7512.

[7] *Id.* at § 903.

[8] Smith was with charged with, but acquitted of, possession of a firearm prohibited and possessing an instrument of a crime.

probation.[9]  On October 10, 2017, Smith filed a direct appeal to this Court. We affirmed her judgment of sentence on March 7, 2019.  **See Smith**, **supra**. Smith did not seek allowance of appeal in our Supreme Court.

On March 6, 2020, Smith, through Robert Gamburg, Esquire, filed a PCRA petition, alleging that trial counsel, Paul Hetznecker, Esquire, was ineffective for:  (1) failing to call Leonard Ware, who would have testified that certain narcotics recovered by the police belonged to him rather than Smith; and (2) withdrawing a pre-trial omnibus motion that alleged a violation of the knock-and-announce rule.[10]  **See** PCRA Petition, 3/6/2020, at 3-5.  The Commonwealth filed a motion to dismiss Smith's petition on August 25, 2020. Counsel filed an amended PCRA petition on October 3, 2020, attaching a witness certification from Ware and pharmacy documentation showing Ware's August 21, 2015 and September 22, 2015 prescriptions for Endocet.  **See** 42 Pa.C.S.A. § 9545(d)(1); Pa.R.Crim.P. 902(A)(15).

On December 2, 2021, an evidentiary hearing was held, during which the PCRA court heard testimony from trial counsel and Ware.  On January 21, 2022, the court issued a notice of its intent to dismiss the petition pursuant

_____

[9] Smith was sentenced on the PWID and criminal use of a communication facility convictions, but no further penalties were imposed on the remaining convictions.

[10] **See** Pa.R.Crim.P. 207(A)-(C) (providing that a law enforcement officer executing a search warrant shall give notice of the officer's identity and authority to occupant of the premises specified in the warrant prior to entry, and shall wait reasonable time for response prior to entry, unless exigent circumstances apply).

to Pa.R.Crim.P. 907. The court denied the petition on February 16, 2022.[11] Attorney Gamburg filed Smith's notice of appeal to this Court on March 15, 2022 and he submitted Smith's Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal on March 24, 2022. Thereafter, Attorney Gamburg requested to withdraw, which this Court granted on April 28, 2022. The PCRA court appointed new counsel, Lawrence Bozzelli, Esquire, on June 10, 2022. Attorney Bozzelli filed a *Turner*/*Finley* no-merit letter in lieu of an appellate brief and a petition to withdraw as counsel.

Prior to reviewing the merits of this appeal, we first determine whether PCRA counsel has fulfilled the procedural requirements for withdrawing as counsel. *Commonwealth v. Daniels*, 947 A.2d 795, 797 (Pa. Super. 2008). Our Supreme Court has stated that competent counsel must independently review the record before withdrawal shall be permitted. *Turner*, *supra* at 928, citing *Pennsylvania v. Finley*, 481 U.S. 551, 558 (1987). Independent review requires counsel to review the case zealously. *Commonwealth v. Mosteller*, 633 A.2d 615, 617 (Pa. Super. 1993). Counsel must then submit a "no-merit" letter or brief on appeal to this Court, listing the issues which the petitioner wants reviewed, explaining how and why those issues lack merit, detailing the nature and extent of counsel's diligent review of the case, and

---

[11] On March 9, 2022, Smith filed a second PCRA petition, which the PCRA court dismissed on April 19, 2022 due to this pending appeal.

requesting permission to withdraw. *Commonwealth v. Karanicolas*, 836 A.2d 940, 947 (Pa. Super. 2003).

Counsel shall also forward to the petitioner a copy of the "no-merit" letter or brief and counsel's petition to withdraw, as well as explain to petitioner his right to proceed *pro se* or with new counsel. *Commonwealth v. Friend*, 896 A.2d 607, 614-15 (Pa. Super. 2006). After it is determined that counsel has satisfied these technical requirements, this Court must independently review the record to determine whether the petition is in fact meritless. *Commonwealth v. Rykard*, 55 A.3d 1177, 1184 (Pa. Super. 2012).

Instantly, Attorney Bozzelli has complied with the procedural requirements. *See Turner/Finley* Letter, 9/23/22. In particular, PCRA counsel forwarded his petition to withdraw and a copy of his no-merit letter/brief to Smith, which details his zealous review of the record and review of the issues Smith raised in her PCRA petition, why he believes the issues Smith raises are meritless, and a letter explaining to Smith her right to proceed *pro se* or with new counsel. Therefore, we may proceed to review the following issues Smith raised on appeal:

1. The PCRA court erred by denying [Smith]'s PCRA petition.[12]

---

[12] This issue is encompassed within issued two and three and need not be independently reviewed.

2. The PCRA court erred by finding that trial counsel's ineffective failure to pursue a motion to suppress under the "knock-and-announce" rule did not justify relief.

3. The PCRA court erred by finding that trial counsel's ineffective failure to present the testimony of [Ware] at trial did not justify relief.

Rule 1925(b) Statement, at 1.[13]

Our standard and scope of review are as follows:

When reviewing the propriety of an order pertaining to PCRA relief, we consider the record in the light most favorable to the prevailing party at the PCRA level. This Court is limited to determining whether the evidence of record supports the conclusions of the PCRA court and whether the ruling is free of legal error. We grant great deference to the PCRA court's findings that are supported in the record and will not disturb them unless they have no support in the certified record. However, we afford no such deference to the post-conviction court's legal conclusions. We thus apply a *de novo* standard of review to the PCRA court's legal conclusions.

*Commonwealth v. Diaz*, 183 A.3d 417, 421 (Pa. Super. 2018) (citations omitted and formatting altered).

Additionally, "the PCRA court's credibility determinations, when supported by the record, are binding on this Court." *Commonwealth v. Mason*, 130 A.3d 601 (Pa. 2015). "When a PCRA hearing is held, and the PCRA court makes findings of fact, we expect the PCRA court to make necessary credibility determinations." *Commonwealth v. Johnson*, 966 A.2d 523, 539-40 (Pa. 2009) (primary reason for evidentiary hearing is to allow court to make credibility determinations).

_____

[13] The PCRA court, in its Rule 1925(a) opinion, and Attorney Bozzelli, in his *Turner*/*Finley* "no-merit" letter responded to the issues Smith raised in her Rule 1925(b) statement of errors complained of on appeal.

Here, Smith raises two claims of trial counsel's ineffectiveness. One avenue of relief under the PCRA is to demonstrate "ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(ii). Counsel is presumed to be effective, and "the burden of demonstrating ineffectiveness rests on [the] appellant." *Commonwealth v. Rivera*, 10 A.3d 1276, 1279 (Pa. Super. 2010).

> To satisfy this burden, an appellant must plead and prove by a preponderance of the evidence that: (1) [her] underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate [her] interests; and, (3) but for counsel's ineffectiveness[,] there is a reasonable probability that the outcome of the challenged proceeding would have been different. Failure to satisfy any prong of the test will result in rejection of the appellant's ineffective assistance of counsel claim.

*Commonwealth v. Holt*, 175 A.3d 1014, 1018 (Pa. Super. 2017) (internal citations omitted).

First, Smith argues that Attorney Hetznecker was ineffective in withdrawing a pre-trial omnibus motion, which included a suppression motion based on the officers' failure to comply with the knock-and-announce rule. *See* Amended PCRA Petition, 10/3/20, at 5. Smith alleges that she and Ware would testify that the officers did not knock and announce themselves as police, but rather "rammed down the door immediately." *Id.* Smith is afforded no relief.

Instantly, Ware stated, "the cops bus[t]ed open the door with a f—king hammer." N.T. Evidentiary Hearing, 12/2/21, at 8; *id.* at 17 (Ware testifying other individuals ran upstairs "when they heard the guy banging on the door with a ram"); *id.* at 19 (Ware testifying officers "banged the door open"). However, Officer Yerges testified that after obtaining a warrant, he and other officers "knocked and announced at 1551 South Woodstock Street." N.T. Waiver Trial, 12/9/16, at 47; *id.* at 48 (Officer Yerges testifying nobody let officers into house; "force was used to enter the property.").

Attorney Hetznecker testified regarding his decision to withdraw the omnibus pre-trial motion. He withdrew the motion because there was a chance that hearsay regarding conversations Smith allegedly had with the CI prior to the execution of the search warrant would be admitted as evidence. N.T. Evidentiary Hearing, 12/2/21, at 33, 40; *id.* at 37 (Attorney Hetznecker testifying "I didn't [believe] we had a chance of winning the motion to suppress"); *id.* (Attorney Hetznecker testifying "I felt there was more damage that would come out through the hearsay.").

The PCRA court determined that Ware's "profane and expletive-laden testimony [was] neither credible nor persuasive" and, thus, there was no reasonable probability that the trial court would have granted Smith's motion to suppress based on his testimony. Trial Court Opinion, 6/10/22, at 6-7. On the other hand, the PCRA court found Officer Yegers' testimony to be credible. *Id.* at 6. The PCRA court also credited Attorney Hetznecker's testimony that

withdrawing the omnibus pre-trial motion was strategically intended to prevent the trial court from hearing damaging evidence. *Id.* at 8.

Indeed, although Ware's testimony claims the officers did not knock and announce, the PCRA court determined that he was not credible. *See Mason*, **supra** (credibility determinations supported by record binding on this Court). Moreover, Attorney Hetznecker had a reasonable basis to withdraw the motion where he did not think it was meritorious and wanted to prevent evidence about Smith's prior drug sales from being admitted at trial. *See* N.T. Evidentiary Hearing, 12/2/21, at 37-39.

In light of the foregoing, the PCRA court's determination that Attorney Hetznecker was not ineffective in withdrawing the motion to suppress was not in error. *Holt*, **supra**.

Second, Smith claims that Attorney Hetnzecker was ineffective for failing to call Ware as a witness. Specifically, Smith averred that prior to trial, she communicated to Attorney Hetnzecker that the pills belonged to Ware, not to her. *See* PCRA Petition, 10/3/20, at 4. Smith argues that this defense would have exonerated her. *Id.* Smith's claim is meritless.

Ware testified that he was on the way to his mother's house but stopped to see Smith, his niece. N.T. Evidentiary Hearing, 12/2/21, at 8. Ware also testified, "I was prescribed [the] medication[, and the doctor] gave me a f—king letter and I showed the letter to the damn cop." *Id.* at 10. However, when the prosecutor stated that evidence presented at trial showed that the pill bottle had the name scratched out, the following exchange occurred:

Ware: Well, that cop scratched the name out.

Attorney Gamburg: Leonard, stay calm please.

Ware: That punk ass cop.

Attorney Gamburg: Leonard.

Ware: All right. Hey, I don't have nobody scratch nothing out on my shit.

The Court: Mr. Ware, your attorney has asked you and I'm asking you to please stop.

Ware: Let me tell you something . . .

Attorney Gamburg: No, no, sir. The Court is speaking and we're in court.

Ware: I'm telling you that . . .

*Id.* at 20.

Further, Attorney Hetnzecker testified he ultimately decided to forego calling Ware as a witness because "[he] felt like [the] credibility of that particular defense was useless." *Id.* at 32. Attorney Hetnzecker stated,

> It's unlikely from my understanding that [] Ware would be there just out of the blue and have his drugs on him, pills on him, just on a social visit with [] Smith. It looked like it could very easily be that the [j]udge would not believe that at all, and actually consider that it was joint possession between the two of them.
>
> * * *
>
> It would be clearly, I think, an ill-advised attempt to put on sham evidence frankly.

*Id.* at 33-34, 36. Attorney Hetnzecker testified regarding the joint possession argument that would have been available to the prosecution: "[] Ware went [to Smith's], obviously, with the idea that the two of them would sell drugs,

- 11 -

those pills that he had[.]" ***Id.*** at 34. Moreover, Attorney Hetnzecker highlighted that Smith was charged with conspiracy, but it pertained to another co-defendant, not Ware. ***Id.***

In determining that Attorney Hetnzecker was not ineffective, the PCRA court found that Ware's testimony was neither credible nor persuasive and, in light of Attorney Hetnzecker's testimony, the court determined that Smith's purported defense did not have arguable merit. Trial Court Opinion, ***supra*** at 6, 8.

Indeed, although Ware testified that, "[The Endocets] belonged to [him]," and that he had just picked them up from the pharmacy, ***id.*** at 16-17, the PCRA court determined Ware's testimony was not credible. ***Mason***, ***supra***. Additionally, Attorney Hetnzecker explained that foregoing this defense was a strategic decision and prevented the prosecution from claiming Smith and Ware had joint possession of the Endocet. ***Id.*** at 34, 36.

In light of the foregoing, the PCRA court did not err in its determination that Attorney Hetnzecker had a reasonable basis to forego calling Ware as a witness and to forego raising Smith's purported defense. ***Diaz***, ***supra***; ***Holt***, ***supra***. Moreover, we have independently reviewed the record and determined that Smith's petition is, indeed, meritless. ***Rykard***, ***supra***.

Order affirmed. Petition to withdraw granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/18/2023